UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JOSEPH BUCKMAN                                                                                          PLAINTIFF

v.                                                                                      CIVIL ACTION NO. 3:14-CV-00921-CRS

NAU COUNTRY
INSURANCE COMPANY, *et al.*                                                                             DEFENDANTS

## MEMORANDUM OPINION

This case is before the Court on Defendant AgPerspective, Inc.'s ("AgPerspective") motion to dismiss Plaintiff Joseph Buckman's claims. Buckman has alleged negligent and intentional misrepresentation claims against AgPerspective stemming from an insurance agent's statements concerning a corn crop policy. For the reasons below, the Court will grant AgPerspective's motion.

## BACKGROUND

This case is about representations made in connection to a crop insurance policy. In March 2011, Buckman applied through AgPerspective for a Group Risk Income Protection ("GRIP") insurance policy under the Federal Crop Insurance Act ("FCIA") for his 2011 corn crop. At the time of the application, an AgPerspective insurance agent told Buckman that he would be entitled to an indemnity payment if Marion County's 2011 actual corn crop yield was more than ten percent less than the expected yield; Marion County's 2011 expected yield was 136.7 bushels per acre; and Marion County's 2011 actual corn crop yield would be based on planted acres.

1

Buckman subsequently purchased and entered into the GRIP policy with the NAU Country Insurance Company ("NAU"). The parties do not dispute that the agent misrepresented the policy terms. Marion County's 2011 actual corn crop yield would be based on harvested acres – not planted acres. This shift in calculation alters the number of bushels per acre in the final actual yield, which could decrease the likelihood of triggering an indemnity payment.

On March 8, 2012, the same AgPerspective agent visited Buckman to discuss 2012 corn crop coverage. At this time, the agent informed Buckman:

- Marion County's 2011 actual corn crop yield was 102.1 bushels per acre; and
- Under the GRIP policy, NAU would issue Buckman an indemnity payment in the amount of $104,961.

The agent also provided Buckman with a document showing a calculation purporting to be Marion County's actual corn crop yield. Buckman then leased his farm, disposed of his farm equipment, and exited farming.

On April 11, 2012, the same AgPerspective agent visited Buckman. The agent told Buckman that AgPerspective originally calculated the corn crop yield using the planted acres standard, not the correct harvested acres standard. Marion County's 2011 actual corn crop yield, under the harvested acres standard, was 125 bushels per acre. Using the harvested acres standard, the agent told Buckman, NAU would not issue an indemnity payment.

## STANDARD

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is plausible if "the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although the complaint need not contain "detailed factual allegations," "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 (2007) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

AgPerspective moves to dismiss Buckman's misrepresentation claims against it. To establish a claim of negligent or intentional misrepresentation under Kentucky law, the plaintiff must establish that his reliance on a misrepresentation was reasonable. *See Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004); *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). AgPerspective's only argument supporting dismissal of these claims is that Buckman's reliance on the agent's misrepresentation could not have been reasonable. Two questions will decide whether Buckman's reliance was reasonable: First, whether, as a matter of law, Buckman is deemed to know the terms and conditions of his corn crop insurance policy. Second, if the Court finds Buckman has constructive knowledge of the policy's content, whether he nonetheless reasonably relied on the insurance agent's misrepresentations.

Under the FCIA, private and approved insurance providers may offer crop insurance to individuals. *See* 7 U.S.C. § 1502(b)(2). The Federal Crop Insurance Corporation ("FCIC") then reinsures the providers and indemnifies covered losses. *See* 7 C.F.R. § 407.9. The FCIC issues –

and the United States Department of Agriculture publishes – the basic GRIP policy's terms and provisions, including specific corn crop terms and provisions. *See id.* The contents of Buckman's GRIP policy included, among other provisions, the method for calculating indemnity payments and corn crop actuarial documents. *See Group Risk Income Protection Coverage Insurance Policy*, http://www.rma.usda.gov/policies/2005/grip/pdf/05-gripbasi.pdf. The actuarial documents – after the corn crop has been harvested – include the relevant county's expected and final bushels per acre. The documents do not include the calculation of an indemnity payment or whether the totals trigger the indemnity payment issuance.

AgPerspective argues that Buckman is deemed to have constructive knowledge – regardless whether Buckman had actual knowledge – of the terms of the GRIP policy. In *Federal Crop Insurance Corp. v. Merrill*, an insured farmed could not recover for crop losses under his federal insurance policy because his claims were not compliant with the regulations' terms and conditions, regardless of the federal insurance agent's misrepresentations. 332 U.S. 380, 386 (1947). *Merrill*, however, involved a direct claim against the FCIC. This distinction has caused some courts to find *Merrill*'s imputation of constructive knowledge does not apply to actions against private insurers. *See Farmers Crop Ins. Alliance v. Laux*, 442 F.Supp.2d 488, 491 n.4 (S.D. Ohio 2006); *Dailey v. Am. Growers Ins.*, 103 S.W.3d 60, 69 (Ky. 2003) (Cooper, J., concurring). Other courts, however, have found that insureds have constructive knowledge of the statutory policy terms regardless of whether their crops are insured by a private party or directly by the federal government. *Nobles v. Rural Comm. Ins. Servs.*, 122 F.Supp.2d 1290, 1303 – 04 (M.D. Ala. 2000); *Walpole v. Great American Insurance Companies*, 914 F. Supp. 1283, 1290 (D. S.C. 1994) *aff'd*, 56 F.3d 63 (4th Cir. 1995).

In finding the *Merrill* doctrine does not apply in transactions with private insurers, courts have generally cited *Merrill*'s remark that "[W]e assume that recovery could be had against a private insurance company. But the [FCIC] is not a private insurance company." 332 U.S. at 383; *see also Laux*, 442 F.Supp.2d at 491 n.4; *Dailey*, 103 S.W.3d at 69 (Cooper, J., concurring). However, *Merrill*'s statement compares a purely private entity and a government entity. When that case was decided, private insurers did not offer insurance under the FCIA. Indeed, *Merrill* rested its decision in part on the observation that all courts have a duty "to observe the conditions defined by Congress for charging the public treasury." 332 U.S. at 385. The question here is whether *Merrill* extends to the reinsurance of a private insurance contract that the federal law regulates, dictates, and promotes.

Buckman argues that this constructive knowledge should only apply when claims are against a government entity. However, federal crop insurance is not just another form of insurance, but a government remedial program that does impact the public fisc through reinsurance. Congress did not intend to insure farmers' profits, but to prevent "disastrous losses." *Mann*, 710 F.2d at 147. As a government remedial program, the federal treasury covers program costs – here through reinsuring a private insurer's policy. As other courts have found, the impact to the public fisc requires that "the insured must be charged with notice of the regulations and policy provisions." *Id.* at 1290 n.12.

The federal flood insurance program established under the National Flood Insurance Act of 1968 ("NFIA") is an apt analogy to the federal crop policy at issue. Although insurers are explicitly considered to be "fiscal agents of the United States" under the NFIA, 42 U.S.C. § 4071(a)(1), the federal reinsurance framework is remarkably similar to the FCIA. In both instances, a private insurer issues a federally reinsured policy that a federal agency promulgated

and published in the federal register. If there is a claim on the policy, the federal fisc is likely impacted through the reinsurance. In the NFIA context, insureds are presumed to have knowledge of the federal flood insurance policy and associated regulations. *See Fadel v. National Mut. Fire Ins. Co.*, 3:12–CV–00337–H, (W.D. Ky. 2013). This Court sees no principled reason to treat the FCIA differently. This is in line with *Merrill*'s pronouncement that "everyone is charged with knowledge of the United States Statutes at Large," and "the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85 (1947). The Court finds Buckman is charged with knowledge of his GRIP policy.

As Buckman is charged with knowledge of the policy, the Court must decide whether his reliance was reasonable on AgPerspective's agent's statements. In Buckman's amended complaint, he says he relied on the agent's representation that Buckman "would be entitled to recover an indemnity payment under the GRIP Policy if the actual 2011 Marion County corn crop was more than ten percent (10%) less than the expected yield of 136.7 bushels per acre.... [and] that the calculation of the Marion County 2011 actual corn crop yield would be based on planted acres." Amend. Compl. ¶ 6, ECF No. 19. Buckman alleges he relied on these representations in purchasing the GRIP policy. While this information was erroneous, the correct information was located within the policy. The GRIP Corn Provisions say that "The actuarial documents will specify whether harvested or planted acreage is used to calculate the yield that is used to establish the expected county yield and calculate revenues." *See* Group Risk Income Protection, Corn Crop Provisions, www.rma.usda.gov/policies/2006/grip/pdf/06gripcrn.pdf. The actuarial documents, which are considered part of the policy, say that the "yield used for this

6

offer is calculated by dividing the NASS estimate of Corn for Grain Production in the county by the NASS estimate of Corn Harvested for Grain Acres in the county." *See* ECF No. 26-5.

Buckamn also alleges that he relied on the agent's representation "that the actual final Marion County 2011 corn crop yield was 102.1 bushels per acre and that as a result he would be getting an indemnity payment of $104,961.00 from NAU." *Id.* ¶ 9. Buckman alleges that the agent also "presented Buckman with a document purporting to be a government calculated final Marion County 2011 corn crop yield." *Id.* Buckman argues that he relied on these representations in leasing his farm, terminating his leases on other acreage, disposing of farming equipment, and ultimately exiting farming.

AgPerspective argues that Buckman could not have reasonably relied on these statements as he had constructive knowledge of enough information to determine the actual yield as well as to calculate the indemnity payment. The Court agrees. A reasonable person with knowledge of the actual totals, even when an insurance agent confronts him with differing totals, does not reasonably rely on the agent's representations without minimal due diligence. Here, Buckman had constructive knowledge of all the necessary information to quickly determine the crop yield did not trigger an indemnity payment. Prior to receiving any funds, Buckman relied to his detriment in exiting the corn industry. The Court finds this reliance, however, was not reasonable. Therefore, the Court will grant AgPerspective's motion to dismiss.

The Court will enter a separate opinion in accordance with this memorandum.

March 18, 2016

Charles R. Simpson III, Senior Judge
United States District Court